## Case No. 8,655.

M'AFEE et al. v. The CREOLE.

[8 Leg. Int. 82; 1 Phila. 190.]

District Court, E. D. Pennsylvania. 1851.

PRACTICE IN ADMIRALTY—SUBJECT-MATTER—FORM OF ACTION—PENALTIES—FAILURE TO PROVIDE FOOD.

[1. A contract or tort may be maritime in its subject-matter, and yet the action to be brought thereon is not in admiralty, but at law. It is not the subject-matter, but the suit,—the legal process,—that determines admiralty jurisdiction.]

[2. The act of May 17, 1848 (9 Stat. 220), which provides that passengers on any vessel who are put upon a short allowance of food may recover three dollars per day while on such short allowance, stipulates a penalty which must be sued for not in admiralty, but at law.]

[3. A libel which charges that the owners and master of a ship, in disregard of their duty, deprived the libellants (passengers) of reasonable

food and drink, and subjected them to cruelties and indignities. charges a case properly within admiralty jurisdiction.]

In admiralty.

[The ninth article of the libel mentioned in the latter part of the opinion of the court is as follows: "That, by reason of said master and owners of said barque taking on board thereof as passengers for the voyage mentioned in the third article (from Londonderry to Philadelphia) the said libellants, it became and was the duty of said master and owners to furnish to said libellants severally food and drink, comforts, necessaries, and kindnesses, during said voyage; but these libellants, for themselves, and each for himself and herself, saith that the said master and the owners of the said vessel, disregarding their duty in this respect, did oppressively and maliciously deprive the libellants of reasonable food and drink, comforts, necessaries, and kindnesses during the whole of the said voyage, but subjected libellants to many cruelties and wanton indignities, whereby the said master and owners became liable and indebted to each of said libellants in the sum of three hundred and thirty-three dollars."]

KANE, District Judge. This is a proceeding instituted by certain persons, who were recently passengers on board an emigrant ship, to recover damages in consequence of having been put on short allowance during the voyage. The libel presents their claim in three aspects:

1. As founded on the British statute of 5 Vict. c. 107. It appears, however, that this statute was repealed before the contract between these parties was made; and it is unnecessary therefore to consider what might otherwise have been its bearing.

2. As founded on the fourth section of the act of congress of May 17, 1848 (9 Stat. 220). That section enacts "that all vessels employed as aforesaid shall have on board, for the use of such passengers, at the time of leaving the last port whence such vessel shall sail, well secured under deck, for each passenger, at least fifteen pounds of good navy bread, ten pounds of rice, ten pounds of oatmeal, ten pounds of wheat flour, ten pounds of peas and beans, thirty-five pounds of potatoes, one pint of vinegar, sixty gallons of fresh water, ten pounds of salted pork, free of bone, all to be of good quality, and a sufficient supply of fuel for cooking; but at places where either rice, oatmeal, wheat flour or peas and beans cannot be procured, of good quality and on reasonable terms, the quantity of either or any of the last named articles may be increased and substituted therefor; and in case potatoes cannot be procured on reasonable terms, one pound of either of said articles may be substituted in lieu of five pounds of potatoes, and the captains of such vessels shall deliver to each passenger at least one tenth part of the aforesaid provisions weekly, commencing on the day of sailing, and daily at least three quarts of water, and sufficient fuel for cooking; and if the passengers on board of any such vessel in which the provisions. fuel and water herein required shall not have been provided as aforesaid, shall at any time be put on short allowance during any voyage, the master or owner of any such vessel shall pay to each and every passenger who shall have been put on short allowance the sum of three dollars for each and every day they may have been on such short allowance, to be recovered in the circuit or district court of the United States: provided, nevertheless, that nothing herein contained shall prevent any passenger, with the consent of the captain, from furnishing for himself the articles herein specified; and, if put on board in good order, it shall fully satisfy the provisions of this act so far as it regards food: and provided further, that any passenger may also, with the consent of the captain, furnish for himself an equivalent for the articles of food required in other and different articles; and if, without waste or neglect on the part of the passenger, or inevitable accident, they prove insufficient, and the captain shall furnish comfortable food to such passengers during the residue of the voyage, this, in regard to food, shall also be a compliance with the terms of this act." Upon this section the question is made by the respondents, whether the case is within the cognizance of this court sitting in admiralty. It must be conceded that there is nothing in the words "to be recovered in the circuit or district court of the United States," which directly imports that the proceeding shall be according to the forms of the admiralty.

The circuit courts have no original admiralty jurisdiction whatsoever; and the district courts have original jurisdiction of a great variety of causes, which are conducted according to the common law. When either of these courts is named, without especial designation of its mode of procedure, the just intendment is in favor of the common-law forms of process and pleading. But it has been argued, that, the subject-matter in the present case being of maritime contract or marine tort. the remedy must be, of course, in the forum, and according to the practice of that court, which has under the judiciary act [1 Stat. 73] exclusive original cognizance of all civil causes of admiralty and marine jurisdiction. The argument, if allowed its full force and effect. would divest the circuit court of the power to adjudicate in the case, which the section gives in terms. But it is fallacious in its logic. A contract may be maritime in its strictest sense, and yet the suit upon it will be brought at common law; and so may the action to recover damages for just such a marine tort as this. No man doubts that indebitatus assumpsit will lie for freight on a bill of lading, or case or trespass according to the circumstances for the breach of a passenger contract. It is not the cause

in the sense of the subject-matter, claim of action, that fixes the jurisdiction, but the cause in its secondary sense, the suit, the legal process. The definition disposes of the argument.

Then a similar question was raised on this section some months ago, in the case of Orr v. The Achsah [Case No. 10,586]. The ingenious counsel who argued for the libellant made me doubt for a time whether they had not sought their remedy under the act of congress rightly in the admiralty. I thought that the $3 a day might perhaps be regarded as in the nature of damages liquidated by statute. It did not at once occur to me that the admiralty, as a court of equity, could not properly hold cognizance of pleas founded on an enactment of such a nature. But the case was not on final hearing, and I had no occasion to decide or discuss the point. I refer to that case because I am not satisfied that the act of congress does not liquidate damages, but stipulates a penalty; and that this penalty must be sued for, as other "penalties incurred under the laws of the United States" are sued for, on the common-law side of the district court, when the trial of the issue of fact must be by jury.

3. The third aspect of the libellant's demand is presented by the ninth article of the libel. This, as it seems to me, presents a case which is clearly within the admiralty jurisdiction of the court. I have looked into the evidence which has been taken into the courts, and I find that the greater part of it is directed to the question of a breach of the fourth section of the act of 1848. As by the decision I have made, that part is now more or less irrelevant, I will hear the counsel of the parties upon the question of fact, so far as they judge it proper to discuss it on the evidence; the two points being as I apprehend: What tort or breach of contract has there been? and what damages have the libellants by reason of it?